DECISION
The plaintiffs[1] timely appeal from a Providence Zoning Board of Review ("board") decision affirming the Providence Historic District Commission's ("commission") granting of a certificate of appropriateness to The McAuley Corporation ("McAuley Corp."). This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
McAuley Corp. owns real property in Providence's Elmwood Historic District. As such, and because it wanted to perform renovations and repairs on the property, McAuley Corp. sought a certificate of appropriateness ("certificate") from the commission, which in Providence is a thirteen-member body charged with the responsibility of preserving historic and architecturally valuable structures. See G.L. 1956 §§45-24.1-1 -3(a). After holding a public hearing-attended by a quorum of 7 commission members-the commission voted 4 to 3 in favor of granting the certificate to McAuley Corp. However, because the commission believed that the Providence Historic District Commission Rules and Regulations ("Rules") required at least a 5-to-2 vote (when, as here, there was a 7-member quorum) for an application to be granted, it denied the application. The commission so decided based upon its combined reading of § 4.4 of its Rules, which provides that "[t]he concurring vote of the quorum shall be necessary to approve or disapprove any plans," and § 4.3 of its Rules, which provides that "[a] majority of the duly appointed members shall constitute a quorum."
Subsequent to the hearing, however, and at the behest of McAuley Corp., the commission reconsidered its position and concluded that the 4-to-3 vote sufficed under its Rules for McAuley Corp. to have been granted a certificate. Accordingly, the commission passed a resolution granting such. The aggrieved plaintiffs then appealed to the board, which, among other things, found as fact that the commission voted 4 to 3 in favor of granting McAuley Corp. a certificate. Apparently agreeing that such a vote sufficed under the Rules, and that neither prejudicial procedural error nor clear error resulted, see G.L. 1956 § 45-34.1-72, the board itself voted unanimously to deny the plaintiffs' appeal. Thereafter, the plaintiffs filed a timely appeal to the Superior Court from the board's decision, to the merits of which the Court now turns.
But first, the Court notes that G.L. 1956 § 45-24-69(d) governs this Court's review and provides in pertinent part that:
 "The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law."
As previously noted, the commission's rules provide that "[t]he concurring vote of the quorum," that is, "[t]he concurring vote of . . . `[a] majority of the duly appointed members,'" shall be necessary to approve or disapprove any plans. And although it is clear that the 7 members in attendance at the hearing comprised a quorum, the Court finds that the commission's rules are otherwise ambiguous in that they are reasonably susceptible of more than one interpretation. See generally SeaFare's American Cafi, Inc. v. Brick Market Place Associates, 787 A.2d 472, 476 (R.I. 2001) ("`[a] contract is ambiguous if . . . it is reasonably susceptible of different constructions'"); Blais v. Franklin, 31 R.I. 95,77 A. 172, 177 (1910) ("the language of the statute is ambiguous [if it] . . . is fairly susceptible of two or more interpretations"). Notwithstanding this ambiguity, however, the Court fails to see, and the plaintiffs have failed to adequately explain, how the commission could reasonably conclude that its rules required at least a 5-to-2 vote. To the contrary, it appears to this Court that the only reasonable alternative interpretations are that the commission's Rules require either (1) the concurrence of the entire quorum, see Black's LawDictionary 286 (7th ed. 1999) (defining "concurrence" as "[a]greement; assent"); or (2) the concurrence of a majority of the quorum, seeRobert's Rules of Order, p. 4, ll. 5-7 (newly revised 10th ed. 2000) (hereinafter R.O.N.R. (10th ed.)), ("[t]he basic principle of decision in a deliberative assembly is that, to become the act or choice of a body, a proposition must be adopted by a majority vote"). Simply, the Court is at a loss as to how the commission could reasonably conclude that a 5-to-2 vote was required.
In any event, and as an initial matter, the commission was quite proper in reconsidering that conclusion because
 "[i]t has generally been held that administrative tribunals endowed with quasi-judicial powers embody the inherent power to reconsider their judicial acts. Analogous to the inherent authority of courts of general jurisdiction, the power to reconsider prior decisions has been found to be conferred on administrative tribunals as a necessary consequence of their statutory duty. In essence the power to render a decision in the first instance embodies the power to reconsider that decision. Provided such power is not prohibited by the enabling statute, `denial to such tribunals of the authority to correct error and injustice and to revise its judgments for good and sufficient cause would run counter to the public interest.'" In re Denisewich, 643 A.2d 1194, 1197 (R.I. 1994) (internal citations omitted.)
Furthermore, the commission made no error of law in its new conclusion because
 "in [the] absence of persuasive circumstances or a statutory directive to the contrary, it is a well-recognized principle that a majority constitutes a quorum and if a quorum is present, the legislative, judicial or administrative body has authority to act in those matters coming within its jurisdiction. An obvious corollary to this principle is that a majority vote is sufficient for a legislative, judicial or administrative body to act in those matters within the ambit of its jurisdiction. If the General Assembly intended that the [commission] . . . could act only if in unison, it would have expressed such a unique requirement with a clarity that is not found . . . [in chapter 24.1 of title 45, titled Historical Area Zoning, the commission's enabling legislation]." Domestic Safe Deposit Co. v. Hawksley, 111 R.I. 224, 232, 301 A.2d 342, 346 (1973) (citing Bray v. Barry, 91 R.I. 34, 160 A.2d 577 (1960)); see also R.O.N.R. (10th ed.), p. 391, ll. 20-25 ("[w]henever it is desired that the basis for decision be other than majority vote . . . the desired basis should be precisely defined in the bylaws or in a special rule of order").
Indeed, other than requiring that the commission adopt and publish rules and regulations necessary to carry out its functions, G.L. 1956 §45-24.1-4(a)(1), the commission's enabling legislation provides nothing in regards to the procedural manner in which the commission was to operate. Moreover, to the extent that the commission "has not at any time adopted any rules of procedure and [because] . . . there are no statutory regulations spelling out the same[,] the . . . [commission's] deliberations . . . were to be governed by generally accepted rules of parliamentary procedure," Lecht v. Stewart, 483 A.2d 1079, 1080-81 (R.I. 1984). "In determining proper parliamentary procedure, it is permissible to resort to Robert's Rules of Order, the widely accepted codification of parliamentary law." Id. at 1081 (internal citation omitted).
In that regard, Robert's Rules of Order provides that "[a] vote by voice is the regular method of voting on any motion that does not require more than a majority vote for its adoption," R.O.N.R. (10th ed.), p. 44, ll. 4-6, and that "[t]he basic principle of decision in a deliberative assembly is that, to become the act or choice of a body, a proposition must be adopted by a majority vote," R.O.N.R. (10th ed.), p. 4, ll. 5-7; see also R.O.N.R. (10th ed.), p. 387, ll. 5-13. Thus, as is clear from the record, the very fact that the commission took a voice vote after the initial hearing is some indication that only a majority vote was required. Moreover, although "[m]odifications of the foregoing principle that impose a requirement of more than a majority vote arise: (a) where required by law; (b) where provided by special rule . . . as dictated by its own conditions; or (c) where required under the general parliamentary law," R.O.N.R. (10th ed.), p. 4, ll. 13-18, here such modification is neither required by the General Laws of Rhode Island, see G.L. 1956 chapter 24.1 of title 45, Historical Area Zoning; provided by special rule of the commission, see Providence Historic District Commission Rules and Regulations; nor required by general parliamentary law, see R.O.N.R. (10th ed.), "Charts, Tables List" at 46. Finally, "[a] majority vote in the affirmative adopts any motion unless it is one of the particular motions that require a larger vote under parliamentary law or the rules of the organization," R.O.N.R. (10th ed.), p. 45, ll. 31-34. Because the vote at issue here did not require more than a majority for passage, once a majority of the commission voted in the affirmative, the motion to award the certificate to McAuley Corp. was adopted.
Accordingly, the board's decision, which concluded that the commission voted 4 to 3 in favor of granting the certificate of appropriateness and denied the plaintiffs' appeal, was neither affected by error of law nor made upon unlawful procedure. The board's decision is thus affirmed.
[1] The plaintiffs are Brent Bachelder, Peter Haraty, William and Ruth Daniels, John and Suzanne Alexander, Maria Acevedo, Karen Hlynsky and Michael Warner.